## 18462. Roberts *v.* The State.

Luke, J. The defendant was convicted on circumstantial evidence which fails to exclude every reasonable hypothesis save that of the guilt of the accused; and therefore the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

Decided November 15, 1927.

Larceny; from Cook superior court—Judge Knight. June 20, 1927.

On circumstantial evidence, including testimony as to tracking by hounds, Jim Roberts was convicted of larceny of an automobile. It was testified, that about an hour before sundown on a Sunday in the latter part of November the owner of the automobile parked it across the street from a drug-store in the town of Adel. He missed it about dark, and it was found about 8 or 8:30 o'clock the same evening, standing in the street by a warehouse near the railroad. Belle Wright testified that when she was riding down the street on the Sunday evening mentioned, she saw the car in question with two boys riding in it, and turned around and rode behind it, suspecting that it had been stolen, and the boys stopped it, jumped out of it, and ran behind the warehouse, and then down the railroad; one of them had on a brown overcoat and light cap and black suit; the other had on a black suit. She saw them by the light of the automobile in which she sat. She and her companion then drove to where the car in question was standing, and, on finding that it was the car of Mr. Roberts, told him that they had found it. A crowd had then gathered there. Track dogs were put on the trail of the boys, she followed with the crowd, and, in about thirty or forty minutes from the time when she first saw them, Jim Roberts was found in "his house," a short distance from the railroad, and arrested. She had known him about four months. When found "he had on an overcoat and black suit and a black cap; the overcoat was brown and corresponded with the one" she "saw get out of the car, and about the size;" he was "a little tall, with the same kind of cap and suit and black suit." The hounds took the trail behind the warehouse; there was no street there and people did not frequent that place on Sun-

Criminal Law, 16 C. J. p. 1179, n. 67.
Larceny, 36 C. J. p. 899, n. 34; p. 905, n. 44.

day afternoons. Two hounds from the convict camp of the county were put on the trail by the warden of the camp. He testified: "One of them is the young dog that is registered bloodhound; the other is an old dog, but is an ordinary hound [that] . . I had been using for six years; the other one about two years. . . They were as accurate as any dog . . in following tracks on any occasion. . . I turned the dogs loose close to the car, but the dogs took the track about fifty yards from the car; . . it was across the railroad from the car. . . The dogs went across a vacant lot there till they hit the South Georgia Railroad, to a crossing, . . probably half a mile; . . they turned back there and came right back through the edge of the quarters and came back around to the house where they stopped. There were two negroes in the house, Jim Roberts and Jessie King. The dogs stopped at the back door and bayed. I . . went in the house at the front door. . . When I found Jim Roberts there in the shanty he was dressed in light brown overcoat, gray cap, a dark-colored suit. . . He told me he had been in Frazier's restaurant right back just a few feet this side of the house where I found him. He said he had been there at Frazier's about two hours. I asked him where he went into this house, and he said he went into the house where he was found at the back door. I couldn't say he lived there. . . The registered dog is about two and a half years old and has made several chases on the camps, in the woods and different places. The other is an old dog; I have had him in use ever since I have been at the camp, and consider them as reliable as anybody's dogs. They are trained practically every day. They are on the road every day, and I run them two or three times a week. I have never run but one of my own convicts that got away that I put the dogs directly on the track of. . . I caught him. I have run several different tracks trailing people as criminals, and have captured some besides the convicts. These followed that night about a mile or a little farther, and the way we came back was a little farther, where they came back through the quarters like. . . I held the dogs with a chain and they were not turned loose until they picked up the track. I followed immediately behind the dogs. . . I met the boy at the door. I think the other negro had on a striped sport sweater. . . He had on no overcoat. . . The house where I caught

[Jim Roberts] was not the first house the dogs' went to. . . I have had about twenty years' experience with dogs." The sheriff testified that he had some good success and some bad with a track hound; that he made two or three races with "these same dogs," and "did not catch anything," and would not swear that these dogs were reliable as track hounds; he did not think he could. The defendant introduced several witnesses to establish an alibi.

*C. E. Parrish*, for plaintiff in error.